E-FILED
Wednesday, 27 April, 2022  08:27:06 AM
Clerk, U.S. District Court, ILCD

# United States District Court
## CENTRAL DISTRICT OF ILLINOIS

FILED

APR 2 5 2022

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW POULEN , ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No. _____ |
| ) | *(The case number will be assigned by the clerk)* |
| ALISHA WAITE, UNITED STATES ) | |
| PROBATION OFFICER ) | |
| _____ ) | |
| _____ ) | |
| _____ ) | |
| _____ ) | |
| _____ , ) | |
| ) | |
| Defendant(s) ) | |

*(List the full name of ALL plaintiffs and defendants in the caption above. If you need more room, attach a separate caption page in the above format).*

## COMPLAINT*

*Indicate below the federal legal basis for your complaint, if known. This form is designed primarily for pro se prisoners challenging the constitutionality of their conditions of confinement, claims which are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants). However, 42 U.S.C. § 1983 and "Bivens" do not cover all prisoners' claims. Many prisoners' legal claims arise from other federal laws. Your particular claim may be based on different or additional sources of federal law. You may adapt this form to your claim or draft your own complaint.*

☐ 42 U.S.C. §1983 (state, county or municipal defendants)

☒ Action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971)(federal defendants)

☐ Other federal law: _____

☐ Unknown _____

### I. FEDERAL JURISDICTION

*****Please refer to the instructions when filling out this complaint.** Prisoners are not required to use this form or to answer all the questions on this form in order to file a complaint. This is not the form to file a habeas corpus petition.*

①

Jurisdiction is based on 28 U.S.C. § 1331, a civil action arising under the United States Constitution or other federal law. *(You may assert a different jurisdictional basis, if appropriate).*

## II. PARTIES

A. Plaintiff:

Full Name: MATTHEW R. POULIN

Prison Identification Number: 17786-026

Current address: P.o. Box 5000

PEKIN, IL 61555

*For additional plaintiffs, provide the information in the same format as above on a separate page. If there is more than one plaintiff, each plaintiff must sign the Complaint, and each plaintiff is responsible for paying his or her own complete, separate filing fee.*

B. Defendants

Defendant #1:

Full Name: ALESHA WAITE

Current Job Title: FEDERAL PROBATION OFFICER, URBANA DIVISION

Current Work Address 127 U.S. COURTHOUSE SOUTH VINE STREET

URBANA, IL 61802    PHONE: (217) 373-5851

## III. LITIGATION HISTORY

The *"three strikes rule"* bars a prisoner from bringing a civil action or appeal *in forma pauperis* in federal court if that prisoner has "on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

A. Have you brought any other lawsuits in state or federal court dealing with the same facts involved in this case?    Yes ☐    No ☒

If yes, please describe N/A

B. Have you brought any other lawsuits in federal court while incarcerated?

Yes ☒    No ☐

C. If your answer to B is yes, how many? ONE    Describe the lawsuit(s) below.

②

1. Name of Case, Court and Docket Number
   POULIN V. WAGNER ET AL., PEORIA DIVISION, 2:21-CV-02309-JBM

2. Basic claim made WRONGFUL INCARCERATION DUE TO FALSE-POSITIVE TEST RESULTS OF KERRI WAGNER'S PHARMCHEC DRUG OF ABUSE PATCH

3. Disposition (That is, how did the case end? Was the case dismissed? Was it appealed? Is it still pending?) PENDING

## IV. STATEMENT OF CLAIM

Place(s) of the occurrence URBANA, ILLINOIS

COMES NOW, MATTHEW R. POULIN, THE PLAINTIFF IN THIS CASE, AND BRINGS A CIVIL ACTION UNDER BIVENS V. SIX UNKNOWN FEDERAL NARCOTICS AGENTS, 403 U.S. 388 (1971) AGAINST UNITED STATES PROBATION OFFICER, ALISHA WAITE. DURING MY TIME SERVED ON SUPERVISED RELEASE, MS. WAITE UNLAWFULLY DELEGATED JUDICIAL AUTHORITY. SHE IMPOSED EXTRA CONDITIONS ON ME TO FOLLOW THAT WERE NOT ORDERED BY THE COURT. MANY OF HER OWN CONDITIONS WERE FOUND TO BE UNCONSTITUTIONAL BY THE CIRCUIT COURTS, AS WELL AS THE SUPREME COURT. HOWEVER, MS. WAITE EXERCISED HER OWN DECISION-MAKING AUTHORITY THAT INFRINGED ON MANY OF MY FEDERAL CIVIL RIGHTS WHICH IS IMPROPER DELEGATION OF JUDICIAL POWER.

(1)   MY FIRST TERM OF SUPERVISED RELEASE BEGAN IN JANUARY 2018 UNTIL MS. WAITE REVOKED ME IN MARCH 2019. DURING THIS PERIOD MS. WAITE BARRED ME FROM ANY INTERNET USE, DESPITE A FEDERAL COURT ORDER ALLOWING ME TO DO SO. MY SUPERVISED RELEASE CONDITION ORDERED BY THE COURT STATES " YOU SHALL PARTICIPATE WITH THE U.S. PROBATION OFFICE'S COMPUTER AND INTERNET MONITORING PROGRAM DURING YOUR TERM OF SUPERVISION. THE MONITORING PROGRAM WILL START AS SOON AS POSSIBLE AFTER YOUR SUPERVISION BEGINS... DURING THIS TIME, YOU SHALL INSTALL FILTERING SOFTWARE ON ANY COMPUTER YOU POSSESS OR USE WHICH WILL MONITOR AND BLOCK ACCESS TO CHILD PORNOGRAPHY WEBSITES."

MS. WAITE, HOWEVER, DISREGARDED THIS ORDER AND INSTEAD BANNED ME FROM ANY ACCESS TO THE INTERNET, EVEN AFTER NUMEROUS REQUEST FOR HER TO INSTALL MONITORING SOFTWARE ON A DEVICE FOR INTERNET USE. THUS, SHE MADE NO EFFORT IN ALLOWING ME TO PARTICIPATE IN THE U.S. PROBATION OFFICE'S COMPUTER AND INTERNET MONITORING PROGRAM ORDERED BY THE COURT AND SHE TOLD

③

ME IF SHE FOUND OUT I WAS USING THE INTERNET SHE WILL REVOKE MY SUPERVISION. THIS IS IN VIOLATION OF MY FIRST AMENDMENT RIGHT TO SPEAK AND IMPROPER DELEGATION OF JUDICIAL AUTHORITY.

INDIVIDUALS WHO ARE CONVICTED OF RECEIPT AND POSSESSION OF CHILD PORNOGRAPHY DO NOT FORFEIT THEIR FIRST AMENDMENT RIGHT TO SPEAK BY ACCESSING THE INTERNET. SEE UNITED STATES V. CRUME, 422 F.3d 728, 733 (8TH CIR, 2005). THE REQUIREMENT THAT RESTRICTS UPON THE SPEECH OF A SEX OFFENDER MUST BE NARROWLY TAILORED TO THE INDIVIDUALS OFFENSE AND APPLIES EQUALLY TO THE CIVIL REGULATION OF SEX OFFENDER'S WHO USE THE INTERNET. SEE WHITE V. BAKER, 696 F. SUPP. 2d 1289, 2010 WL 1609758 (N.D. Ga, 2010).

② MS. WAITE REQUESTED THE GOVERNMENT TO INDICT ME IN APRIL, 2019 ON A FAILUR TO REGISTER A CLOSED FACEBOOK ACCOUNT AFTER THE COURT GRANTED ME BOND ON A VIOLATION TO CONTINUE TREATMENT. MY CONCIL TOLD ME SHE WAS NOT TRYING TO GET ME TREATMENT, BUT SEND ME BACK TO PRISON. MS. WAITE DENIED ME DUE PROCESS BY NOT GIVING ME THE OPPORTUNNITY TO REGISTER THIS ACCOUNT AS SHE BANNED ME FROM INTERNET USE. DURING SENTENCING ON FEB. 5TH, 2020 THE DISTRICT JUDGE ADVISED ME TO TAKE THE ISSUE TO COURT. *(CASE # 19-CR-20030-001)

③ I STARTED MY SECOND TERM OF SUPERVISED RELEASE ON NOVEMBER 29TH, 2020. MS. WAITE AGREED TO INSTALL MONITORING SOFTWARE ON MY PHONE THIS TIME. HOWEVER, SHE EXERCISED HER OWN DECISION-MAKING AUTHORITY BY MONITORING ALL MY PHONES ACTIVITY AND BLOCKING MANY OTHER INTERNET SITES OTHER THAN JUST BLOCKING "ACCESS TO CHILD PORNOGRAPHY SITES" AS MY COURT ORDER STATES. SHE BLOCKED ALL ACCESS TO ANY SOCIAL MEDIA SITES INCLUDING FACEBOOK, TWITTER, SNAPCHAT AND EVEN YOUTUBE. SHE BLOCKED ALL DATING SITES AND LEGAL GAMBLING SITES. SHE ALSO BLOCKED ACCESS TO ALL ADULT PORNOGRAPHY SITES AND ANYTHING "SEXUALLY EXPLICIT"

ALISHA WAITE DELEGATES JUDICIAL AUTHORITY AS SHE BANNED ME FROM SITES THAT ARE CONSTITUTIONALY LEGAL. THIS IS A VIOLATION OF MY FIRST AMENDMENT RIGHT TO SPEAK, AND LIMITING ACCESS TO RELATIONSHIPS IS A VIOLATION OF SUBSTANTIVE DUE PROCESS OF THE FOURTEENTH AMENDMENT AND A VIOLATION TO MY FIRST AMENDMENT RIGHT TO ASSOCIATION.

THE FIRST AMENDMENT FREEDOM OF ASSOCIATION APPLIES TO SOCIAL AND PERSONAL ASSOCIATIONS, SUCH AS DATING. SEE WILSON V. TAYLOR, 773 F. 2d 1539 (11TH CIR, 1984). A 7TH

* SEE TRANSCRIPTS 02-05-20

④

CIRCUIT DISTRICT JUDGE ERRED BY IMPOSING SPECIAL CONDITIONS OF SUPERVISED RELEASE THAT REQUIRED INTERNET MONITORING OF DATING WEBSITES BECAUSE ONE CAN NOT INFER IMPROPER MOTIVE FROM DEFENDANT'S USE OF DATING WEBSITES, EVEN THOUGH HE WAS A REGISTERED SEX OFFENDER. SEE **UNITED STATES V. BAKER**, 755 F.3d 515 (7TH CIR, 2014). THE SUPREME COURT DECISION IN **PACKINGHAM V. NORTH CAROLINA**, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017), FOUND A FIRST AMENDMENT VIOLATION WHERE THE PETITIONER WHO WAS A REGISTERED SEX OFFENDER WAS ESSENTIALLY "BARRED" FROM SOCIAL MEDIA NETWORKING SITES.

ADULT PORNOGRAPHY IS LEGAL AND HAS A FIRST AMENDMENT PROTECTION. THIS HAS BEEN CONCLUDED BACK IN 2007 BY THE 3RD CIRCUIT AS THEY VACATED A DISTRICT COURTS ORDER BANNING A DEFENDANT FROM POSSESSING OR VIEWING ANY MATERIAL DEPICTING SEXUALLY EXPLICIT CONDUCT AS DEFINED IN 18 U.S.C.S. § 2256 (2), AS IT COULD BE POSSESSED AND VIEWED LEGALLY. SEE **UNITED STATES V. KOSTENIUK**, 251 FED. APPX. 97 (3RD CIR, 2007). THE 7TH CIRCUIT CAME TO THE SAME CONCLUSION WHEN IT VACATED THIS EXACT CONDITION OF MY SUPERVISED RELEASE IN 2014 AS THEY CANT BAN SOMETHING THAT IS LEGAL. SEE **UNITED STATES V. POULIN**, 745 F.3d 796 AT 802 (7TH CIR, 2014), AND **UNITED STATES V. TAYLOR**, 796 F.3d 788 (7TH CIR, 2015).

④    MS. WAITE KEPT ME UNDER CONTINUOUS SURVEILLANCE AS SHE ALSO MONITORED ALL MY TEXT MESSAGES AND PHONE CALLS WITHOUT A COURT ORDER TO DO SO. THE CONDITION OF MY SUPERVISED RELEASE IS VERY SPECIFIC ON WHAT IS TO BE MONITORED, AND READING MY TEXT MESSAGES WAS NOT IMPOSED BY THE COURT. A PROBATION OFFICERS INTERFERENCE IS LIMITED TO CONDITIONS JUSTLY IMPOSED BY A COURT OF LAW AND MAY BE NO GREATER THAN NECESSARY TO PROTECT THE PUBLIC. HOWEVER, MS. WAITS ACTIONS WENT FAR BEYOND HER REASONABLE BOUNDS. THIS IS A VIOLATION OF THE RIGHT TO PRIVACY UNDER THE FIRST AMENDMENT.

18 U.S.C.S. § 3583 (d)(3), AS WELL AS A SPECIAL CONDITION OF MY SUPERVISED RELEASE, PERMITS A PROBATION OFFICER TO SUBMIT A SEARCH OF ANY PROPERTY, INCLUDING A PHONE, ONLY IF THE PROBATION OFFICER HAS REASONABLE SUSPICION OF A VIOLATION OF SUPERVISED RELEASE OR ANY UNLAWFUL CONDUCT BY THE PERSON HAD OCCURED.

I HAVE REASONABLE EXPECTATION OF PRIVACY IN TEXT MESSAGING, AS THERE IS NO EVIDENCE OF A CRIME BEING COMMITED. THERE IS NO "REASONABLE SUSPICION" TO MONITOR MY TEXT MESSAGES CONTINUOUSLY FISHING FOR EVIDENCE OF A VIOLATION OR CRIME I HAD NOT

COMMITED, AND THERE IS NO SPECIFIC NEXUS BETWEEN TEXT MESSAGES AND MY ORIGINAL OFFENSE. THUS CONTINUOUS MONITORING OF MY PERSONAL CONVERSATIONS WITH MY FAMILY AND FRIENDS IS NOT NARROWLY TAILORED TO MY ORIGINAL OFFENSE COMMITED. THERE IS NO CORRELATION BETWEEN POSSESSION OF CHILD PORNOGRAPHY AND CONTACT SEX OFFENSES, AND MY OFFENSE DID NOT INVOLVE ANY MESSAGING OR COMMUNICATION WITH ANY MINOR. DUE TO MY OFFENSE BEING A INTERNET CRIME, I HAVE NO REASONABLE EXPECTATION OF PRIVACY FOR INTERNET USE, HENCE THE COURTS DECISION TO MONITOR MY INTERNET USE WHICH WAS NARROWLY TAILORED INTO BLOCK-ING WEBSITES RELATED TO MY ORIGINAL OFFENSE. HOWEVER, CONTINUOUS SURVEILLANCE OF ANY ACTIVITY OTHER THAN INTERNET MONITORING IS A VIOLATION OF PRIVACY, AND ILLEGAL "SEARCH".

MS. WAITS SEARCH IS UNREASONABLE IN SCOPE. MONITORING OF TEXT MESSAGES AND PHONE CALLS CONSTITUTES "SEARCH" WITHIN SCOPE OF CONSTITUTIONAL PROTECTION SINCE THE MONITORING DEVISE INVOLVES MONITORING WITHOUT CONCENT OR COURT PERMISSION FOR PUR-POSES OF OBTAINING INFORMATION WHEN THERE IS NO EVIDENCE OR REASONABLE SUSPICION OF A VIOLALATION OR CRIMINAL ACTIVITY. THIS IS IN VIOLATION OF MY FOURTH AMENDMENT. SEE UNITED STATES V. JONES, 565 U.S. 400, 132 S.ct. 945, 181 L.Ed 2d 911 (2012).

MS. WAITE ALSO HAD ACCESS TO MY PHONES G.P.S., AND USE OF THAT DEVICE TO MONITOR MY MOVEMENT ALSO CONSTITUTES "SEARCH" UNDER THE FOURTH AMENDMENT, AS SHE PHYSICALLY OCCUPIED MY PRIVATE PROPERTY FOR PURPOSE OF OBTAINING INFORMATION. PROLONGED G.P.S. MONITORING DEFEATS EXPECTATION OF PRIVACY THAT OUR SOCIETY RECOGNIZES AS REASON-ABLE. SEE UNITED STATES V. MAYNARD, 615 F.3d 544, 392 U.S. APP. D.C. 291 (D.C. CIR, 2010)

(5) ALESHA WAITE FURTHER VIOLATES MY CONSTITUTIONAL RIGHTS AS SHE DELEGATES JUDICIAL POWER CONTACTING THIRD-PARTIES OF "RISKS" THAT MAY BE OCCASIONED WITH MY CRIMINAL HISTORY. SHE TOLD ME IT WAS HER "DUTY AS A PROBATION OFFICER" TO NOTIFY THIRD-PARTIES WHOM I "ASSOCIATE" WITH TO INFORM THEM OF "RISKS" AND "DANGERS" OF "AFFILI-ATING" THEMSELVES WITH A INDIVIDUAL WITH MY BACKGROUND TO "PROTECT THE PUBLIC." HOWEVER, THIS IS NOT LISTED AS A DUTY OF A PROBATION OFFICER IN U.S.C.S. §3603.

MANY COURTS HAVE BEEN FINDING INTERFERING WITH THIRD-PARTIES TO NOTIFY THEM OF "RISKS" AS VAGUE AND UNCONSTITUTIONAL AS IT LIMITES ACCESS TO RELATIONSHIPS IN VI-OLATION OF ONES SUBSTANTIVE DUE PROCESS RIGHT. SEE HALLEY V. HUCKABY, 902 F.3d 1136,

⑥

1153 (10TH CIR, 2018). IN FACT, THE 7TH CIRCUIT COURT OF APPEALS VACATED THE CONDITION OF MY SUPERVISED RELEASE THAT REQUIRED ME TO "NOTIFY THIRD PARTIES OF RISKS THAT MAY BE OCCASIONED BY THE DEFENDANT'S CRIMINAL RECORD OR PERSONAL HISTORY OR CHARACTERISTICS AND SHALL PERMIT THE PROBATION OFFICER TO MAKE SUCH NOTIFICATIONS AND TO CONFIRM THE DEFENDANT'S COMPLIANCE WITH SUCH NOTIFICATION" THE COURT FOUND IT WAS TOO AMBIGUOUS AND BROAD. SEE UNITED STATES V. POULIN, 809 F. 3d AT 934 (7TH CIR, 2016). HOWEVER, MS. WAITE TOOK IT UPON HERSELF TO ENFORCE THIS CONDITION ON ME ANYWAY.

ALISHA DEMANS ME TO DISCLOSE TO HER ANY INDIVIDUAL, SPECIFICLY WOMEN, OF WHOM I "ASSOCIATE" WITH. IN UNITED STATES V. THOMPSON, 777 F. 3d AT 376-377 (7TH CIR, 2015), THE TERM "ASSOCIATION" WAS FOUND TO BE "FATALLY VAGUE" AND NEEDS CLARITY. DOES IT DENOTE FRIENDSHIP, ACQUAINTACSHIP OR FREQUENT MEETINGS? WOULD A ACCIDENTAL OR CHANCE MEETING WITH A INDIVIDUAL VIOLATE THIS CONDITION? SEE UNITED STATES V. PURHAM, 795 F. 3d 761 (7TH CIR, 2015).

UNITED STATES V. THOMPSON ALSO VACATED THE "RISK-NOTIFICATION" CONDITION AS THERE WAS "NO INDICATION OF WHAT IS MENT BY 'PERSONAL HISTORY' AND 'CHARACTERISTICS' OR WHAT 'RISK' MUST BE DISCLOSED TO WHICH 'THIRD PARTIES' (ID. AT 379). THUS, THE 7TH CIRCUIT HAS UNANIMOUSLY CONCLUDED THAT TO NOTIFY THIRD PARTIES OF "RISKS" IS IMPERMISSIBLY VAGUE. SEE UNITED STATES V. KAPPES, 782 F. 3d AT 849 (7TH CIR, 2015), UNITED STATES V. ORTIZ, 817 F. 3d 553, 555 (7TH CIR, 2016), UNITED STATES V. BRICKART, 825 F. 3d 832, 841-42 (7TH CIR, 2016), UNITED STATES V. HUNT, 930 F. 3d 921 (7TH CIR, 2019) AND UNITED STATES V. GRECO, 938 F. 3d 891 (7TH CIR, 2019).

THE 10TH CIRCUIT, HOWEVER, HAS FOUND THE "RISK-NOTIFICATION" CONDITION TO BE UNCONSTITUTIONAL AS IT IS IN VIOLATION OF THE FUNDAMENTAL RIGHT OF ASSOCIATION. SEE UNITED STATES V. LONJOSE, 663 F. 3d 1292, 1303 (10TH CIR, 2011). IN UNITED STATES V. BEAR, 769 F. 3d 1221 (10TH CIR, 2014) THE COURT CONCLUDED THAT "ALLOWING A PROBATION OFFICER TO MAKE THE DECISION TO RESTRICT A DEFENDANTS SIGNIFICANT LIBERTY INTEREST CONSTITUTES AN IMPROPER DELEGATION OF THE JUDICIAL AUTHORITY TO DETERMINE THE NATURE AND EXTENT OF DEFENDANTS PUNISHMENT."

UNITED STATES V. CABRAL, 926 F. 3d 687 (10TH CIR, 2019) CONCLUDED THAT

BECAUSE THE RISK-NOTIFICATION CONDITION GRANTS THE PROBATION OFFICER DECISION-MAKING AUTHORITY THAT COULD INFRINGE ON A WIDE VARIETY OF LIBERTY INTERESTS, IT IS AN IMPROPER DELEGATION OF JUDICIAL POWER.

ARTICLE III OF THE UNITED STATES CONSTITUTION CONFERS THE AUTHORITY TO IMPOSE PUNISHMENT ON THE JUDICIARY, AND THE JUDICIARY MAY NOT DELEGATE THAT AUTHORITY TO A NON-JUDICIAL OFFICER. ALISHA WAITE, A NON JUDICIAL OFFICER, KNOWING THE "RISK-NOTIFICATION" CONDITION WAS VACATED BY THE COURT OF APPEALS AS A PROVISION OF MY SUPERVISED RELEASE, STILL CHOSE TO ENFORCE IT ON ME. THIS CONSTITUTES AS UNLAWFULL DELEGATION OF JUDICIAL AUTHORITY. IN DOING SO MS. WAITE VIOLATED MY FIRST AMENDMENT RIGHT TO ASSOCIATION AND MY SUBSTANTIVE DUE PROCESS RIGHT OF THE FOURTEENTH AMENDMENT.

THIS EFFECTED MY FUNDAMENTAL WAY OF LIVING, AS MS. WAITE INTERFERED WITH MY FRIENDSHIPS AND PERSONAL ROMANTIC RELATIONSHIPS. SHE HAS CONTACTED FEMALE THIRD PARTIES TO NOTIFY THEM OF "RISKS" OCCASIONED WITH MY CHARGE WITHOUT MY PERMISSION, OR THE THIRD PARTIES CONCENT. MS. WAITE OBTAINS THIRD PARTIES CONTACT INFORMATION THROUGH THE MONITORING SOFTWARE SHE INSTALLED ON MY PHONE, AND CONTACTS THEM WITHOUT THE COURT ALLOWING HER TO DO SO.

6  THIS ALSO INFRINGES ON MY FITH AMENDMENT RIGHT TO SELF INCRIMINATION. THIS PRIVILEGE HAS BEEN HELD TO APPLY TO ANSWERS OR INFORMATION THAT MIGHT IMPLICATE FUTURE CRIMINAL PROCEEDINGS. MS. WAITE CONTACTS THIRD PARTIES WITHOUT NOTIFYING THEM THAT ANYTHING THEY SAY WILL BE USED AGAINST ME IN A VIOLATION OF MY SUPERVISED RELEASE OR A CRIMINAL CASE. I HAVE THE RIGHT TO INVOKE MY FITH AMENDMENT RIGHT ON ANY QUESTIONS MY PROBATION OFFICER ASK'S ME THAT COULD INCRIMINATE MYSELF. THIRD PARTIES SHOULD HAVE THAT RIGHT AS WELL WHEN INTERVIEWD BY PROBATION.

IT IS UNCONSTITUTIONAL FOR ALISHA WAITE TO INTERVIEW THIRD PARTIES TO FISH FOR VIOLATIONS OR CRIMINAL CHARGES. AS WILL BE EXPLAINED BELOW, ALISHA INTERVIEWD MY GIRLFRIEND TRYING TO GET INFORMATION TO USE AGAINST ME. ONE OF THE MANY QUESTIONS MS. WAITE ASKED HER WAS HOW LONG I STAYED THE NIGHT AT HER RESIDENCE. DEPENDING ON THE DURATION AND LOCATION, HER ANSWER COULD HAVE INCRIMINATED ME ON ANOTHER 2256(6)

- FAILURE TO REGISTER. THIS IS A VIOLATION OF NOT ONLY MY FIFTH AMENDMENT TO SELF INCRIMINATION, BUT ALSO A VIOLATION OF DUE PROCESS.

7. MS. WAITE INFORMS THIRD PARTIES OF VERY VAGUE AND MISLEADING NATURE OF MY CRIMINAL BACKGROUND LEAVING MANY UNANSWERED QUESTIONS. THIS IS IN VIOLATION OF THE VOID FOR VAGUENESS DOCTRINE OF THE DUE PROCESS CLAUSE. SHE THEN NOTIFY'S THEM ABOUT ANY RISK OR DANGERS SHE THINKS COULD HAPPEN WITH AFFILIATION. ALISHA THEN ASKES THIRD-PARTIES PERSONAL QUESTIONS REGARDING THEIR PERSONAL HISTORY, CRIMINAL BACKGROUND AND IF I HAD HAD ANY CONTACT WITH THEIR KIDS. THIS HAS RESULTED IN BREAKUPS, IN VIOLATION OF MY FIRST AND FOURTEENTH AMENDMENTS. MS. WAITE THEN USES ANYTHING THIRD PARTIES TELL HER IN A VIOLATION REPORT TO BE USED AGAINST ME, LEAVING OUT ANYTHING POSITIVE THEY SAY. MANY STATEMENTS SHE USED IN THE VIOLATION REPORT WERE MISINTERPRETED AND/OR INCORRECT.

8. DURING THE SENTENCING HEARING ON NOVEMBER 30th, 2021 MS. WAITE TESTIFIED ON HEARSAY IN VIOLATION OF THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT. MS. WAITE TOLD THE COURT THAT MY GIRLFRIEND DID NOT KNOW ME BY MY NAME "MATTHEW POULIN", BUT "RICHARD" TRYING TO CONVINCE THE COURT SHE DID NOT KNOW MY LAST NAME. THIS, HOWEVER, IS INCORRECT. TEXT MESSAGES ON MY PHONE WILL BE PRESENTED AT THE HEARING TO SHOW THE COURT MY GIRLFRIEND KNEW MY FIRST AND LAST NAME BEFORE WE EVEN STARTED DATING IN MARCH, 2021. FURTHERMORE, MY GIRLFRIEND VERIFIED TO ME THAT SHE TOLD MS. WAITE SHE KNEW MY NAME, BUT CHOSE TO CALL ME "RICHARD" (MY MIDDLE NAME) BECAUSE HER EX WAS ALSO NAMED MATTHEW. THIS IS DEFAMATION OF CHARACTER, PERJURY AND A VIOLATION OF DUE PROCESS. (SEE TRANSCRIPTS DATED 11-30-21, CASE No'S 11-CR-40116-001 AND 19-CR-20030-001)

9. IT IS IMPORTANT TO NOTE THAT THERE IS ALSO NO CONDITION OF MY SUPERVISED RELEASE PROHIBITING ME FROM FORMING ROMANTIC INTEREST OR SEXUAL RELATIONSHIPS WITH ANY INDIVIDUAL, REGARDLESS IF THEY HAVE CHILDREN UNDER THE AGE OF 18 OR NOT. AND THERE IS NO CONDITION ALLOWING MS. WAITE TO CONTACT THIRD PARTIES TO VERIFY IF THE INDIVIDUAL HAS CHILDREN AND IF I HAVE HAD ANY CONTACT WITH THEM. THE CONDITION OF MY SUPERVISED RELEASE WAS ORDERD THAT I CANT HAVE ANY UNAUTHORIZED CONTACT WITH ANY FEMALE UNDER THE AGE OF 18 WITHOUT 1) BEING IN THE PRESENS OF AN ADULT WHO KNOWS THE NATURE OF MY OFFENSE AND WHO HAS BEEN

APPROVED BY MY PROBATION OFFICER, 2) OR IN THE COURSE OF NORMAL COMMERCIAL BUSINESS OR, 3) ANY OTHER UNINTENTIONAL AND INCIDENTAL CONTACT. THUS, MY PROBATION OFFICER SHOULD GIVE ME THE OPPERTUNITY TO ASK PERMISSION AND GET APPROVAL IF I CHOSSE TO INTERACT WITH A THIRD PARTY WHO HAS CHILDREN AND SEE THOES MINORS ON A REGULAR BASIS. NOT IF I HAVE HAD ANY UNINTENTIONAL OR INCIDENTAL CONTACT WITH A THIRD PARTIES CHILDREN.

A SUPERVISED RELEASE CONDITION THAT PROHIBITED A DEFENDANT, WHO WAS CONVICTED OF POSSESSION OF CHILD PORNOGRAPHY, FROM DATING ANY ADULT WITH MINOR CHILDREN VIOLATED DEFENDANTS FIRST AMENDMENT RIGHT OF ASSOCIATION AS THE DISTRICT COURT MADE INSUFFICIENT FINDINGS TO SHOW COMPLIANCE WITH TAILORING REQUIRMENTS OF 18 USCS § 3583. AS WITH MY CASE, THE DEFENDANT DID NOT HAVE A HISTORY OF INAPROPRIATE CONTACT WITH MINORS OR USING RELATIONSHIPS TO REACH CHILDREN. UNITED STATES V. CARAVAYO, 809 F. 3d 269 (5TH CIR, 2015). MS. WAITE IS PROHIBITING ME FROM DATING OR AFFILIATING MYSELF WITH ANY INDIVIDUAL WHO "MAY" HAVE KIDS AND DEMANDS TO TALK TO THIRD PARTIES TO "VERIFY" IF THEY HAVE KIDS, IN VIOLATION OF MY FIRST AMENDMENT RIGHT OF ASSOCIATION.

I WAS CONVICTED OF SIMPLE POSSESSION OF CHILD (TEEN) PORNOGRAPY. MY OFFENSE DID NOT INVOLVE ANY TOUCHING, COMMUNICATION OR ASSOCIATION WITH ANY MINOR. THUS MY CONVICTION IS NOT DEFINED AS A "SEXUAL ACT" OR A "SEXUAL CONTACT" OFFENSE ACCORDING TO 18 USCS § 2241 (§ 2246 (2) (A) -(D) OR § 2246 (3)). I ALSO HAVE A RULE-OUT DIAGNOSIS OF PEDIFILIA, SEE UNITED STATES V. POULEN, 809 F. 3d AT 934 (#2). I AM A TIER 1 OFFENDER ACCORDING TO § 20911 (2), BUT MS. WAITE TREATS ME AS SOME CHILD MOLESTOR AND A THREAT TO THE PUBLIC. SHE MAKES HER OWN DECISIONS WHICH RESTRICTS MY LIBERTY OTHER THAN THOES IMPOSED BY THE COURT TO DETERMINE MY PUNISHMENT.

(10)   MS. WAITE CONSTANTLY HARRASSED ME OVER MY ROMANTIC RELATIONSHIPS OR ANY FEMALE I HAD CONTACT WITH. SHE DOES NOT ALLOW ME THE OPPERTUNITY TO FIRST ASK FOR PERMISSION AND APPROVAL IF THE WOMAN I TALK TO HAS CHILDREN. THIS IS A VIOLATION OF DUE PROCESS AND VIOLATES MY RIGHT TO PERSONAL AND SEXUAL RELATIONSHIPS UNDER THE FIRST AMENDMENT.

IN UNITED STATES V. CABRAL MENTIONED ABOVE, THE COURT DID NOT RESOLVE THE "ASK-NOTIFICATION" VAGUENESS CHALLENGE. JUST THE IMPROPER-DELEGATION WAS RIPE FOR REVIEW BECAUSE THE COURT DID NOT KNOW HOW A PROBATION OFFICER WOULD ENFORCE THE

RISK NOTIFICATION CONDITION, THEREFORE IT WAS IMPOSSIBLE FOR THE COURT TO ASSESS HOW IT WOULD BE APPLIED TO DETERMINE THE VAGUENESS GROUNDS AS THE 7TH CIRCUIT HAS. HOWEVER, BELOW IS HOW MY OFFICER, ALISHA WAITE, INFORCED THE RISK NOTIFICATION CONDITION. THE FOLLOWING COMBINES CLAIM NUMBERS 5, 4, 6, 7, 9 AND 10.

DURING A HOME VISIT ON WEDNESDAY, APRIL 21ST 2021 ALISHA WAITE DEMANDED ME TO RELEASE ALL PERSONAL INFORMATION REGARDING A WOMAN I JUST STARTED TO DATE NAMED RACHEL. ALISHA DEMANDED HER FULL NAME, ADDRESS, PHONE NUMBER, DATE OF BIRTH AND HER OCCUPATION. SHE ALSO ASKED IF RACHEL HAD KIDS AND TOLD ME SHE NEEDED TO TALK TO RACHEL IMMEDIATELY TO CONFIRM I TOLD HER MY CRIMINAL HISTORY AND THAT I WAS IN COMPLIANCE WITH SUCH NOTIFICATION FOR PUBLIC SAFTY.

I WAS 100% TRUTHFUL TO ALISHA. I TOLD MS. WAITE RACHELS KIDS WERE IN THE CUSTODY OF THE STATE DUE TO HER EX-BOYFRIEND AND THAT I HAD HAD NO CONTACT WITH THEM. I SAID I WAS NOT ABLE TO TELL RACHEL MY WHOLE CRIMINAL HISTORY YET, BUT SHE KNEW I WAS A FELON ON SUPERVISED RELEASE. I DID NOT, HOWEVER, GIVE ALISHA RACHEL'S LAST NAME OR CONTACT INFORMATION. I TOLD ALISHA THAT I WOULD NEED TO ASK RACHEL IF SHE WOULD BE WILLING TO TALK TO ALISHA BEFORE I GAVE OUT HER INFORMATION.

MS. WAITE DEMANDED ONCE MORE FOR RACHEL'S PERSONAL CONTACT INFORMATION WITHIN THE NEXT 24 HOURS SO SHE CAN NOTIFY RACHEL OF THE RISKS AND DANGERS WITH DATING A INDIVIDUAL WITH MY CRIMINAL BACKGROUND AND IF I HAD BEEN AROUND HER KIDS. ALISHA THREATENED ME BY SAYING "RACHEL WILL BE FORCED TO TESTIFY AGAINST YOU IN COURT", ASSUMING I WAS HIDING SOMETHING FROM HER. SHE THEN LEFT MY APARTMENT AND CALLED ME JUST MINUTES LATER ORDERING ME TO GIVE HER RACHELS INFORMATION AND TELL HER MY CRIMINAL HISTORY BY FRIDAY MORNING (24 HOURS), THEN HUNG UP. THIS IS HARRASSMENT, UNDER THE FIRST AMENDMENT.

I LEFT MS. WAITE A VOICE MAIL FRIDAY MORNING, APRIL 23RD. I REQUESTED MORE TIME, BUT ALISHA NEVER CALLED ME BACK. COME MONDAY, APRIL 26TH AFTER WORK I WAS ON MY WAY TO COURT ORDERED TREATMENT. ALISHA, WITH ACCESS TO MY PHONES G.P.S. LOCATION, KNEW THIS AND SHE DECIDED TO CALL RACHEL. SHE OBTAINED RACHEL'S PHONE NUMBER THROUGH THE INTERNET MONITORING SOFTWARE INSTALLED ON MY PHONE.

SHE DID NOT TELL RACHEL THE EXACT NATURE OF MY OFFENSE, BUT MADE IT CLEAR TO RACHEL THAT I WAS A REGISTERD SEX OFFENDER BY FOCUSING HER QUESTIONING ON RACHELS KIDS AND RESIDENCE. THIS MADE RACHEL JUMP TO CONCLUSIONS ABOUT MY CRIMINAL HISTORY. SHE ASKED RACHEL MANY OTHER PERSONAL QUESTIONS AND RACHEL TOLD ME THE PHONE CALL MADE HER VERY UNCOMFORTABLE AND GAVE HER ANXIETY.

TO MAKE MATTERS WORSE FOR RACHEL, ALISHA WAITE DECIDED TO CONTACT DCFS TO INFORM THEM THAT RACHEL WAS DATING A SEX OFFENDER. RACHEL CONFIRMED EVERYTHING I TOLD ALISHA WAS CORRECT, AND THAT I HAD NO CONTACT WITH HER CHILDREN. RACHELS CHILDREN DID NOT EVEN LIVE WITH HER AND SHE GOT SUPERVISED VISITS ONCE PER WEEK. HOWEVER, DCFS OPENED AN INVESTIGATION ON RACHEL UPON REQUEST FROM ALISHA WAITE. MS. WAITE HAD NO REASON OR AUTHORITY TO INFORM DCFS ON A THIRD PARTY, ESPECIALY WHEN THERE WAS NO CONTACT BETWEEN ME AND HER KIDS. AND NO ILLEGAL ACT OR VIOLATION OF MY SUPERVISED RELEASE CONDITIONS.

IN FACT, MY FRIEND AGUSTUS MOVED IN WITH ME IN MAY/JUNE 2021. HIS DAUGHTER WAS ALSO IN THE CUSTODY OF DCFS AT THE TIME. ALISHA DID NOT BOTHER TO INFORM DCFS THAT AGUSTUS WAS LIVING WITH ME AND DID NOT ASK HIM IF I HAD HAD ANY CONTACT WITH HIS DAUGHTER SINCE HE MOVED IN. I ASKED MY FRIEND TO CALL MY OFFICER AND ANSWER HER QUESTIONS SO SHE DOES NOT DO THE SAME WITH HIM AS SHE DID WITH RACHEL, BUT ALISHA DID NOT CALL GUS.

RACHEL ENDED OUR RELATIONSHIP THE MORNING AFTER MS. WAITES PHONE CALL. WE ATTEMPTED TO GET BACK TOGETHER AFTER I EXPLAINED EVERYTHING TO HER, AND THAT MY OFFENSE WAS SIMPLE POSSESSION. HOWEVER, MS. WAITE TOLD RACHEL THAT SHE CANT HAVE ANY CONTACT WITH ME. DUE TO THE STRESS AND ANXIETY MY PROBATION OFFICER PUT ON RACHEL, SHE RELAPSED ON DRUGS AND ALCOHOL. RACHEL WENT BACK TO THE FATHER OF HER CHILDREN (ALSO NAMED MATTHEW), WHO WAS THE REASON HER KIDS WERE WITH DCFS IN THE FIRST PLACE. HE IS A KNOWN DRUG DEALER, WHO ALSO OWNS AND

SELLS ILLEGAL GUNS IN THE URBANA AREA WITH A LENGTHY CRIMINAL HISTORY. I IN-FORMED MS. WAITE ABOUT THIS AND SENT HER A EMAIL HOPEFUL THAT SHE WOULD GET RACHEL SOME HELP, BUT SHE NEGLECTED THE EMAIL AND MY REQUEST. # SEE BELOW

I WAS INFORMED BY MY FRIEND GUS THAT RACHEL DIED OF A DRUG OVERDOSE IN DECEMBER, 2021. MS. WAITE'S NEGLIGENCE ON MY REQUEST COULD HAVE PLAYED A PART IN RACHEL'S DEATH, SEE VEERO V. BUFANO, 901 F. SUPP. 1387 (N.D. ILL. 1995). MS. WAITE'S UNLAWFULL DELEGATION OF JUDICIAL POWER NOT ONLY VIOLATED MY LIBERTY AND ASSOCIATION RIGHTS, BUT PERSONALY AFFECTED THE LIFE OF A INDIVIDUAL WHO WAS NOT ON SUPERVISED RELEASE, PROBATION OR ON PAROL. RACHEL WAS NOT A FELON OR A MINOR.

ABOUT TWO OR THREE WEEKS AFTER ALISHA BROKE UP RACHEL AND I (MAY 10TH OR 17TH), I WAS OBLIGED TO REPORT TO MY TREATMENT PROVIDER (OUT OF FEAR OF BEING DISCHARGED FROM TREATMENT AND THREATS FROM MS. WAITE REVOKING MY SUPERVISION) THAT I WAS TALKING TO A GIRL NAMED ALEXA. I REPORTED THAT THIS WAS A FRIENDSHIP, NOT A ROMANTIC RELAT-IONSHIP. NONETHELESS, MY TREATMENT PROVIDER, LISA RANKIN, IMMEDIATELY CONTACT-ED MY PROBATION OFFICER AND TOLD HER I WAS IN A NEW RELATIONSHIP.

THE FOLLOWING DAY MS. WAITE DEMANDED ME TO GIVE HER ALEXA'S LAST NAME, PHONE NUMBER, ADDRESS AND OCCUPATION AND ASKED ABOUT KIDS. I TOLD MS. WAITE THAT THIS IS "RIDICULOUS". I JUST STARTED TALKING TO THIS GIRL 3-4 DAYS AGO, WE ARE NOT IN A RELATIONSHIP AND THAT WE WERE JUST FRIENDS. I ALSO TOLD ALISHA THAT I WOULD HAVE TO TALK TO ALEXA FIRST TO SEE IF SHE WOULD BE WILLING TO TALK TO HER. ALISHA THEN SERVED ME WITH A MOTION TO MODIFY MY SUPERVISED RELEASE REQUEST-ING THE COURT TO ORDER ME TO RELEASE ALEXA'S CONTACT INFORMATION SO SHE CAN NO-TIFY HER OF "RISK" AND "DANGERS" OCCOCIATED WITH MY HISTORY OF CHILD PORNOGRAPHY. (THIS HEARING WAS SET FOR JULY 13TH, 2021 BUT WAS DISMISSED)

I TOLD ALEXA THE SITUATION AND SHE AGREED TO TALK TO MY PROBATION OFFICER. I EMAILED MS. WAITE ALEXA'S PHONE NUMBER ALONG WITH A LIST OF OTHER INDIVIDUALS WHOM I "ASSOCIATE" WITH. HOWEVER, ALISHA DID NOT CALL EVERYONE ON THE LIST. SHE JUST CALLED ~~GUS'S~~ ALEXA AND GUS'S SISTER LEXI. IT IS CLEAR THAT ALISHA WAITE IS ONLY INTERESTED IN THE WOMEN I KNOW, NOT THE GUYS.

(13)

*ALL EMAILS MENTIONED WILL BE PRESENTED AT THE HEARING, OR IN AN AMENDED COMPLAINT IF REQUESTED.

THE NEXT WEEK ALISHA MADE ANOTHER HOME VISIT. I WAS TEXTING ALEXA AT THE TIME AND I ASKED MS. WAITE IF SHE WOULD LIKE TO TALK TO ALEXA WHILE I HAD HER ON THE PHONE. ALISHA REFUSED AND SHE TOLD ME SHE WILL CALL ALEXA WHEN SHE GETS BACK TO HER OFFICE. ALISHA MADE IT CLEAR THAT SHE DID NOT WANT TO TALK TO ALEXA WITH ME PRESENT, AS SHE DID WITH MY EX-GIRLFRIEND RACHEL.

WHEN I ASKED ALEXA ABOUT THE INTERVIEW, SHE TOLD ME THAT MS. WAITE WAS ASKING HER VERY PERSONAL QUESTIONS. ALEXA WAS AWARE OF MY CRIMINAL BACK-GROUND, BUT ALISHA STILL MADE HER FEEL VERY UNEASY AND UNCOMFORTABLE. SHE TOLD ME I WAS THE ONE ON SUPERVISED RELEASE, NOT HER. ALEXA "NEVER WANTS TO TALK TO MS. WAITE AGAIN." (THIS CONVERSATION CAN BE VERIFIED BY THE RECORDED PHONE CALL I HAD WITH ALEXA WHILE AT THE JEROME COMBS DETENTION CENTER, KANKAKEE ILLINOIS IN SEPTEMBER 2021, PHONE NUMBER 217 202 0757).

MS. WAITE'S ONGOING HARASSMENT, THREATS OF REVOKING MY SUPERVISED RELEASE IF I DON'T DO EVERYTHING SHE TELLS ME TO DO, AND HER IMPROPER DELEGATION OF JUDICIAL AUTH-ORITY WAS TAKING A TOLL ON MY MENTAL HEALTH AND STABILITY. SHE WAS BREAKING UP MY ROMANTIC RELATIONSHIPS AND FRIENDSHIPS, AND DEMANDING ME TO REPORT TO HER EVERY WOMAN I MEET AND PROVIDE HER WITH THEIR CONTACT INFORMATION SO SHE CAN INTERVIEW THEM. I SENT NUMEROUS TEXT MESSAGES REPORTING THE SITUATION TO MY TREATMENT PROVIDER REQUESTING HELP. ALISHA WAITE PUT ME THROUGH MUCH EMOTIONAL DISTRESS AND ANXIETY DURING MY TERM OF SUPERVISION. THE SITUATION ESCALATED IN APRIL - JUNE, 2021, AS MS. WAITE'S FALSE PROMISES AND HARASSMENT SERIOUSLY DISTORTED MY CHOICES TO THE POINT THAT MAKING RATIONAL DECISIONS BECAME IMPOSSIBLE.

11. ON MAY 20TH, 2021 I CALLED ROSECRANCE AROUND 7:00 - 8:00PM THAT NIGHT AND WAS UNABLE TO SUBMIT A DRUG TEST. I TOOK RESPONSIBILITY AND SUBMITED A TEST THE NEXT DAY FOLLOWING WORK. THAT MONDAY, MAY 24TH, I WENT TO TREATMENT AFTER WORK AS I DID EVERY MONDAY, AND DON'T GET BACK TO URBANA TILL AROUND 7:30PM EVERY MONDAY. ON TUESDAY MAY 25TH MS. WAITE DID ANOTHER HOME VISIT AND INFORMED ME I HAD TWO MISSED DRUG TESTS (MAY 20TH & 24TH), KNOWING THAT I SUBMITED A DROP ON THE 21ST AND THAT I CAN'T SUBMIT

A DRUG TEST ON MONDAYS DUE TO TREATMENT. NONETHELESS, MS. WAITE DECIDED TO USE THIS AGAINST ME AS NON-COMPLIANCE FOR FAILING TO PARTICIPATE IN SUBSTANCE ABUSE TESTING AS DIRECTED. THIS IS IN VIOLATION OF DUE PROCESS, AND NO DOUBT RETALIATION IN VIOLATION OF THE FIRST AMENDMENT.

MS. WAITE TOLD ME TO REPORT TO HER OFFICE ON WEDNSDAY MAY 26th. SHE FORCED ME ON THE PHARMCHEK DRUG OF ABUSE SWEAT PATCH, EVEN AFTER I REQUESTED TO REFUSE WEARING THE PATCH AS THERE WAS NO COURT CONDITION REQUIRING ME TO WEAR A SWEAT PATCH FOR DRUG TESTING. SHE THREATEND TO REVOKE MY SUPERVISION IF I CHOOSE NOT TO COMPLY.

(12) ON WEDNSDAY, JUNE 2ND MS. WAITE CLAIMED I INTENTIALY MISSED A APPOINT- MENT SHE ALEGEDLY SCHEDULED FOR JUNE 1ST AND USED IT AGAINST ME. ON MONDAY, JUNE 7TH ALISHA INFORMED ME THAT I HAD ONE POSITIVE URINE TEST AND DEMANDED THAT I ADMIT TO USING DRUGS, IN VIOLATION OF MY FITH AMENDMENT RIGHT TO SELL- INCRIMINATION AND DENYING ME DUE PROCESS. SHE THREATEND TO REVOKE ME IF I DID NOT "CONFESS".

(13) DURING THE NEXT THREE WEEKS, THREE PATCHES ALEGEDLY TESTED POSITIVE FOR THE COCAINE METABOLITE, BENZOYLECGONINE (NOT COCAINE), ON JUNE 8TH, 14TH AND 23UD. I TOLD MS. WAITE THAT THESE WERE FALSE-POSITIVE RESULTS AND THAT I WAS NOT USING ILLEGAL DRUGS WHILE WEARING THE DRUG PATCH. HOWEVER, SHE TOLD ME TO ADMIT TO USING DRUGS, AND AGAIN THREATENED TO REVOKE MY SUPERVISION IF I WAS NOT "100% TRUTHFULL". THIS AGAIN IS A VIOLATION OF MY FITH AMENDMENT AB SELF-INCRIMINATION AND A VIOLATION OF DUE PROCESS. (CASE # 2:21-CV-02309-JBM WAS FILED ON 12/10/21 REGARD- ING FALSE-POSITIVE TEST RESULTS LEADING TO WRONGFUL INCARCERATION AGAINST PHARMCHEM INC.)

(14) THE BRICH OF TRUST WAS LONG BROKEN BETWEEN MS. WAITE AND I. ANY INFORMATION I OR THIRD PARTIES GAVE TO HER WAS BEING USED AGAINST ME IN A VIOLATION, NOT FOR TREATMENT. I SCHEDULED A DRUG ASSESMENT FOR JULY 9TH AT 3PM. MS. WAITE HAD ME ARRESTED ON JULY 6TH, AFTER FILING A PETITION TO REVOKE MY SUPERVISION ON JULY 1ST. THIS WAS ANOTHER VIOLATION OF DUE PROCESS. IT IS CLEAR MS. WAITE HAD NO INTENTION TO HELP ME SUCCEED ON SUPERVISED RELIASE, IN VIOLATION OF 18 USCS § 3603 (3).

PROBATION OFFICERS ARE ENTITLED TO QUASI-JUDICIAL IMMUNITY TO THE EXTENT THEY ARE PERFORMING JUDICIAL DUTIES. BUSH V. RAUCH, 38 F. 3d 842, 847 (6TH CIR, 1994). 18 USCS §3603 RELATES TO FEDERAL PROBATION OFFICERS JUDICIAL DUTIES, AND THEY ARE EXPECTED TO VERIFY THAT AN OFFENDER IS CONSISTENT WITH THE COURT IMPOSED CONDITIONS OF RELEASE. HOWEVER, THIS CLAIM IS NOT STEMMING FROM CONSTITUTIONAL VIOLATIONS FROM THE APPLICATION OF CONDITIONS OF SUPERVISED RELEASE OF WHICH AN OFFICER IS IMMUNE. THE BASE OF THIS CLAIM CONSIST OF CONTITUTIONAL VIOLATIONS OF A PROBATION OFFICERS UNLAWFUL DELEGATION OF JUDICIAL POWER WHICH PUT FURTHER RESTRAINTS ON MY LIBERTY THAN CONDITIONS JUSTLY IMPOSED BY A COURT OF LAW, FOUND UNCONSTITUTIONAL IN UNITED STATES V. CABRAL, 926 F.3d 687 (10TH CIR, 2019)

IMMUNITY IS NOT MANDATORY. THE SUPREME COURT HAS DECIDED THAT AN OFFICER WHO ATTEMPTS TO ENFORCE AN UNCONSTITUTIONAL STATUTE IS "STRIPPED OF HIS OFFICIAL CHARACTER", AND MUST PERSONALY ANSWER FOR A VIOLATION OF THE PLANTIFFS RIGHTS AND CAN NOT RELY ON IMMUNITY. WHITE V. GREENHOW, 114 U.S. 307, 29 L. Ed 199, S. Ct 923 (1885) AND THAT QUALIFIED IMMUNITY IS WAIVED WHEN "THE FACTS ALLEGED SHOW THE OFFICER'S CONDUCT VIOLATED A CONSTITUTIONAL RIGHT" SAUCIER V. KATZ, 533 U.S. 194, 121 S.ct. 2151, 150 L.Ed. 2d 272 AT 201 (2001).

IF A CASE PRESENTS A NEW BIVENS CONTEXT, THE COURT "MUST DETERMINE WHETHER (IT) FALLS SQUARELY INTO ONE OF THE ESTABLISHED BIVENS CATEGORIES, OR IF IT IS DIFFERENT IN A MEANINGFUL WAY FROM PREVIOUS BIVENS CASES DECIDED BY THE SUPREME COURT" BYRD V. LAMB, 990 F. 3d 879, 882 (5TH CIR, 2021). THE SUPREME COURT DECIDED THAT COURTS MUST CONSIDER THE CONSTITUTIONAL RIGHT IN QUESTION AND/OR THE EXISTENCE OF LATENT SPECIAL FACTORS THAT PRIOR BIVENS CASES DID NOT CONTEMPLATE. ZIGLAR V. ABBASI, 137 S.ct. 1843 AT 1860, 198 L. Ed 2d 290 (2017).

THE COURT MUST ADDRESS THE FACTORS SET FOURTH IN THIS COMPLAINT AND PROVIDE A JUDGEMENT TO INSURE THIS NEVER HAPPENS AGAIN TO ANY INDIVIDUAL ON SUPERVISED RELEASE OR PROBATION. ALLOWING AN PROBATION OFFICER TO EXERCISE THEIR OWN DECISION-MAKING AUTHORITY TO ENFORCE THEIR OWN CONDITIONS OF SUPERVISED RELEASE TO FURTHER EXTEND PUNISHMENT NOT IMPOSED BY THE COURT IS UNCONSTITUTIONAL, AS IT RESTRICTS

16

PERSONAL FREEDOM NOT RESTRAINED BY THE CONDITIONS OF SUPERVISED RELEASE IMPOSED BY LAW ENACTED FOR THE COMMON GOOD. THIS INCLUDES, BUT NOT LIMITED TO, VIOLATIONS OF THE RIGHT TO FREELY ASSOCIATE, FREE SPEACH, PRIVACY AND SUBSTANTIVE DUE PROCESS. THIS ALSO VIOLATES 18 USC § 3583(d), AS EXTRA CONDITIONS ARE A GREATER DEPRIVATION OF LIBERTY THAN REASONABLY NECESSARY.

MS. WAITS ACTIONS IMPACTED MY MENTAL MINDSET AND MAKING RATIONAL DECISIONS BECAME IMPOSSIBLE. HER GREATER DEPRIVATION OF MY LIBERTY RESULTED IN TWO SUPERVISED RELEASE REVOCATIONS, SENDING ME BACK TO PRISON FOR ANOTHER 36 MONTHS WHICH COULD HAVE BEEN AVOIDED IF MS. WAITE DID HER JOB CORRECTLY AND DID NOT EXCEED THE SCOPE OF HER AUTHORITY.

15  PROBATION OFFICERS HAVE THE DISCRETION TO FILE A PETITION TO REVOKE SUPERVISION, OR SANCTION THE INDIVIDUAL IF THEY ARE NOT IN COMPLIANCE WITH THEIR COURT CONDITIONS. THE DISCRETION TO REVOKE SHOULD NOT BE ABUSED, AS SENDING A RELEASEE BACK TO PRISON SHOULD BE THE LAST OPTION. HOWEVER, MS. WAITE HAS FILED A PETION TO REVOKE MY SUPERVISION TWICE ALREADY WITHOUT ATTEMPTING TO SANCTION ME FIRST. SHE IS THUS MOTIVATED BY CONSIDERATIONS CLEARLY CONTRARY TO THE MANIFEST PUBLIC INTEREST AND IS HARASSMENT ACCORDING TO UNITED STATES V. WEBER, 721 F. 2d, 266, 268 (9TH CIR, 1983). MS. WAITE COULD HAVE MODIFIED MY SUPERVISED RELEASE CONDITION WITH A SANCTION FOR HOME DETENTION FOR AN ALTERNATIVE TO IMPRISONMENT AS THE PROBATION OFFICER DID IN UNITED STATES V. KLOSTERMON, 2021 U.S. DIST. LEXIS 131368 (CASE NO. 12-300 77, 7TH CIR - JULY 12TH 2021)

16  A PROBATION OFFICER IS INTENDED TO ASSIST INDIVIDUALS IN THEIR TRANSITION FROM PRISON TO LIBERTY, NOT FROM LIBERTY BACK TO PRISON. THIS IS AT THE VERY HEART OF THE CONSTITUTION, AS LIBERTY SECURED BY THE SEPARATION OF POWERS IS FREEDOM FROM PROLONGED, EXCESSIVE OR UNNECESSARY IMPRISONMENT BY EXECUTIVE DECREE. MS. WAITE IS THUS IN VIOLATION OF HER DUTY AS A PROBATION OFFICER SET FORTH IN 18 USCS § 3603 (3). THIS VIOLATES MY EIGHTH AMENDMENT. THIS IS ALSO CLEAR RETALIATION IN VIOLATION OF THE FIRST AMENDMENT, SENDING ME BACK TO PRISON AS A RESULT FOR HAVING AN IMPROPER ATTITUDE TOWARDS HER DELEGATING JUDICIAL POWER BY IMPOSING HER OWN CONDITIONS RESTRICTING MY LIBERTY.

17

I START MY THIRD TERM OF SUPERVISED RELEASE ON JULY 5TH 2022. I DO NOT WANT TO HAVE THE SAME ISSUES I HAD WITH ALISHA WAITE WITH MY NEW PROBATION OFFICER. I HAVE TO COMPLY WITH ALL THE STANDARD AND SPECIAL CONDITIONS OF SUPERVISED RELEASE IMPOSED BY THE COURT, AS WELL AS ALL THE REQUIREMENTS OF SORNA AND THE STATE SORA. WITH AN OFFICER DELEGATING JUDICIAL POWER TO ENFORCE THEIR OWN SELF-MADE CONDITIONS TO FOLLOW, IT MAKES IT NEAR IMPOSSIBLE TO COMPLETE A LENGTHY SUPERVISED RELEASE TERM.

WASHINGTON V. DRUG ENF'T ADMIN., 183 F.3d 868, 873 (8TH CIR, 1999) DECIDED THAT A BIVENS ACTION, NOT A 'FTCA', IS THE CORRECT AND ONLY VEHICLE BY WHICH A PLAINTIFF CAN ASSERT CONSTITUTIONAL TORT CLAIMS. ALISHA WAITE'S ACTIONS CAUSED EMOTIONAL DISTRESS AND MAJOR ANXIETY, INCLUDING PAIN AND SUFFERING OVER THE HARDSHIPS FROM HER BREAKING UP RELATIONSHIPS AND FRIENDSHIPS. SHE COST ME MY STABILITY BY LOOSING MY FULL-TIME EMPLOYMENT AND APARTMENT OF WHICH I WORKED VERY HARD TO GET. THE AMOUNT OF $10,000 SHOULD COVER THE COST OF DAMAGES. A HEARING ON THIS MATTER IS REQUESTED, AND ALISHA WAITE SHOULD BE HELD ACCOUNTABLE FOR HER ACTIONS.

JURY DEMAND          Yes ☒          No ☐

Signed this _____20TH_____ day of _____APRIL_____, 20_22_.

_____
( Signature of Plaintiff)

| | |
|---|---|
| Name of Plaintiff: MATTHEW POULIN | Inmate Identification Number: 17786-026 |
| Address: P.O. Box 5000 PEKIN, IL 61555 | Telephone Number: |

⑱

MATTHEW R. POULIN, #17786-026
FEDERAL CORRECTIONAL INSTITUTION
P.o. Box 5000
PEKIN, IL 61555



CLERK, UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

100 N.E. MONROE ST.

PEORIA, IL 61602